IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MONROE JONES, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 11 C 4827 |
| vs. | ) | |
| | ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, Commissioner | ) | Magistrate Judge |
| of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Monroe Jones ("Claimant") brings this action under 42 U.S.C.§ 405(g)

seeking reversal or remand of the decision of Respondent Michael J. Astrue,

Commissioner of Social Security ("Commissioner"), denying Claimant's applications for

child's disability insurance benefits under Title II and supplemental security income

disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 and 1383

*et seq.* The matter is before the Court on the parties' cross-motions for summary judgment

[Dkt.##16, 20].

Claimant argues that the Administrative Law Judge's decision denying his

applications for child's disability benefits and supplemental security income should be

reversed or, alternatively, should be vacated and remanded to the Social Security

Administration ("SSA") for further proceedings. In support of his motion for summary

judgment, Claimant argues that the Administrative Law Judge ("ALJ") (1) erred in

finding that he did not meet listing 12.05C for mental retardation and (2) disregarded his depression in determining his mental residual functional capacity. The Commissioner contends summary judgment upholding the ALJ's decision is appropriate.

For the reasons discussed herein, Claimant's motion for summary judgment is denied [Dkt.#16], and the Commissioner's motion is granted [Dkt.#20]. The Commissioner's decision denying Claimant's applications for child's disability insurance benefits and supplemental security income disability benefits is affirmed.

## I. BACKGROUND

### A. Procedural History

Claimant filed applications for child's disability benefits and supplemental security income on December 7, 2006, alleging a disability onset date eleven years earlier beginning September 1, 1995. R.20. The SSA initially denied the applications on March 6, 2007 and upon reconsideration on July 11, 2007. R.20. Thereafter, Claimant filed a written request for a hearing on August 23, 2007. R.20. Claimant appeared with his attorney Mary Kopko and testified at a hearing before Administrative Law Judge Jose Anglada. R.20, R.35-54. Vocational expert Thomas Dunleavy also appeared and testified at the hearing. R.20, 54-58. No medical expert testified at the hearing. However, the ALJ submitted medical interrogatories to Dr. David Biscardi Ph.D. and Ellen Rozenfeld Psy.D. R.28, 334-346.

On August 10, 2010, the ALJ issued his decision finding that Claimant has not been under a disability within the meaning of the Social Security Act from September 1, 1995 through the date of the decision. R.29. Specifically, the ALJ found that Claimant had severe impairments, including learning disability, low intellectual functioning and depression. R.23. The ALJ, however, concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R.23. The ALJ then concluded that Claimant has "the residual functional capacity to perform full range of work at all exertion levels but with the following nonexertional limitations. The claimant is unable to understand, remember, and carry out detailed and complex job instructions and engage in work that involves intense focus and concentration for extended periods" and that Claimant "may interact appropriately with the general public only occasionally." R.25. The ALJ ultimately concluded that Claimant was capable of performing his past relevant work as a fast food worker and that work did not require Claimant to perform any work-related activities precluded by his residual functional capacity. R.28

On August 12, 2010, Claimant filed a request with the Appeals Council for review of the ALJ's decision. R.16. On May 23, 2011, the Appeals Council denied Claimant's request for review of the ALJ's decision, making the ALJ's determination the final

decision of the Commissioner. R.1-3. Claimant seeks review in this Court pursuant to 42 U.S.C.§ 405(g).

**B.      Hearing Testimony – July 28, 2010**

### 1. Claimant Monroe Jones

At the time of the hearing, Claimant was 31 years old and had attended high school through the 10th grade. R.25, 36. Claimant testified that he has four children (ages 12, 7, 3, and 1) and lives with his girlfriend and two of his children. R.26, 36, 37. Claimant testified that he currently was not employed but that he previously had worked part-time at Little Caesar's Pizza in approximately 2004 and full-time at Burger King in 2002 doing food preparation. R.26, 37-40. Claimant testified that every time he is hired for a job, he ultimately is fired because he "can't keep up with the tasks." R.44. He also testified that he has some physical problems as well with his shoulder, back and knee. R.44.

Claimant testified that in a typical day he spends time with his girlfriend and children. R.48. He testified that he plays with his children outside and takes them to the park. R.48-49. Claimant testified that he takes out the garbage, helps with house cleaning and grocery shopping but that he does not cook. R.49, 50. Claimant also testified that he had a checking account when he worked. R.50. He stated that he reads a little, is not efficient in making change and needs some help when he travels on public transportation. R.51-53.

## 2. Vocational Expert Testimony

Thomas Dunleavy testified as a vocational expert ("VE") at the hearing and identified Claimant's past work as a fast food worker, which is light and unskilled. R.28, 55. Based on a hypothetical posed by the ALJ which assumed an individual with Claimant's age, limited education and special education and work experience who was (1) unable to understand, remember, and carry out detailed and complex instruction, (2) unable to engage in work that requires intense focus and concentration for extended periods of time and (3) able to only occasionally interact with the general public, the VE testified that an individual with those limitations could perform Claimant's past relevant work as a fast food worker. R.56.

In a second hypothetical posed by the ALJ which assumed an individual with a moderate inability (1) to understand, remember, and carry out detailed instructions, (2) to maintain attention and concentration for extended periods of time, (3) to perform activities within a schedule, (4) to maintain regular attendance and be punctual within customary tolerances, and (5) to complete a normal workweek and workday without interruptions from psychologically-based symptoms, (6) to perform with consistent pace without an unreasonable number and length of rest periods, (7) to interact appropriately with the general public, and (8) to accept instructions and respond appropriately to criticism from supervisors, the VE testified that such an individual would be "unemployable on a sustained basis." R.57.

C.     **Medical Evidence**

### 1. Dr. Michael Stone – Lake Shore Medical Clinic Psychiatric Consultant

Dr. Stone is a clinical psychologist who examined Claimant on February 5, 2007 and reviewed Claimant records from the Social Security Administration prior to the evaluation. R.294. Dr. Stone noted cognitive delays, learning disability and depression in Claimant's medical history. R.295. Dr. Stone described Claimant as having "poor level adaptive functioning" and opined that Claimant "is functioning in the Mild Mental retardation intellectual range as measured by a Full Scale IQ score of 64." R.295.

### 2. Community Mental Health Council

Medical records received from Community Mental Health Council show that Claimant has sough intermittent treatment for depression. R.316-330, 354-368. In October 2006, Claimant sought treatment for feeling depressed after his girl friend had a still birth after a car accident. R.316. He reported decreased memory, daily anxiety, decreased appetite and decreased sleep. R.316. At that time, Claimant indicated that he had no prior psychiatric history but that he has had feelings of being alone since his parents passed away. R.317. The medical records of a mental status evaluation show that Claimant was cooperative, had an "okay" mood and that his thought processes, thought content, speech and affect were within normal limits. R.318.

In April 2010, Claimant returned to Community Mental Health Council to seek additional treatment. R.354-368. Claimant reported having "mood swings, being easily

6

angered, agitated, irritated, having a loss of interest in activities, feeling depressed, isolating [sic] from others, feeling helpless, hopeless, worthless and paranoia." R.354. The medical records show that, on a mental status evaluation, Claimant appearance, affect, speech, thought process, thought content, and attention were all within normal limits. R.355.

### 3. State Agency Psychiatric Consultants

On February 22, 2007, Dr. John Tomassetti PhD, a non-examining State agency psychiatric consultant, performed a non-examining psychiatric review (R.298-311) and a mental residual functional capacity assessment (R.312-315). Dr. Tomassetti opined that Claimant "is able to understand and recall routine instructions." R. 314. Dr. Tomassetti also recognized that "[h]is cognitive style and mood affect his concentration and persistence of more complex tasks" and that Claimant "is uncomfortable around others and is sensitive to criticism." R.314. Ultimately, Dr. Tomassetti concluded that Claimant "retains sufficient residual ability to perform simple and routine tasks." R.314.

On July 9, 2007, Carl Hermsmeyer Ph.D. affirmed the previous assessment given by Dr. Tomassetti and agreed that the findings in the Psychiatric Review Technique form (R.298-311) and Mental Residual Functional Capacity Assessment (R.312-315) "appear[] to be valid." R.333.

### 4. Medical Experts[1]

#### a. David Biscardi Ph.D.

Dr. Biscardi reviewed Claimant's medical records and answered a medical interrogatory dated January 16, 2009. R. 334-339. Dr. Biscardi opined that the medical evidence is not sufficient to assess the severity of Claimant's impairments prior to October 2006. R.339. Dr. Biscardi, however, opined that from October 2006 through the date he answered the interrogatory, Claimant "retains the capacity to perform simple routine tasks, complete a normal workday, interact briefly/superficially with co-workers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." R.339.

#### b. Ellen Rozenfeld Psy.D.

Dr. Rozenfeld reviewed Claimant's medical records and answered a medical interrogatory dated January 21, 2009. R. 340-346. As an initial matter, Dr. Rozenfeld stated that the "[f]ile evidence is sufficient for assessment of severity." R.345. Dr. Rozenfeld then opined that Claimant has depression and most likely a cognitive disorder. R.345. However, she concluded that the record evidence "fails to establish mental retardation in the developmental period with commensurate adaptive deficits." R.345-346. Dr. Rozenfeld opined that although Claimant has a severe mental impairment, it

---

[1] At the request of the ALJ, Drs. Biscardi and Rozenfeld answered medical interrogatories relating to Claimant's alleged mental impairments. R.334-346. Dr. Biscardi is a Ph.D. (R.339), and Dr. Rozenfeld is a licensed clinical psychologist (R.346).

does not meet or equal any listing. R.346. Specifically, Dr. Rozenfeld opined that "[w]ith regard to the B criteria, mild limitations are demonstrated in daily activities, moderate limitations in social functioning and moderate limitations in concentration, persistence and pace" and that "[t]here are no episodes of decompensation." R.346.

Dr. Rozenfeld also opined that the C criteria are not satisfied either. R.346. Specifically, she opined: "With regard to residual work related functions, the claimant retains the mental capacity to concentrate on, understand, and remember routine, repetitive instructions. His ability to carry out tasks with adequate persistence and pace would be moderately impaired but adequate for completion of routine repetitive tasks. The claimant is able to follow and sustain an ordinary routine without special supervision and make simple work related decisions. He would do best in a work setting which does not require sustained, appropriate interaction with the general public, close supervision or close cooperation with coworkers. His ability to handle stress and changes in the work place would be reduced but adequate to tolerate minor changes in routine." R.346.

### D. The ALJ's Decision

On May 10, 2010, the ALJ issued his decision finding that Claimant has not been under a disability, as defined by the Social Security Act, from September 1, 1995, the alleged date of disability, through the date of his decision. R.29-30. Specifically, the ALJ concluded that based on Claimant's application for child's insurance benefits filed on December 7, 2006, he was not disabled as defined in section 223(d) of the Social Security

Act prior to October 11, 2000, the date Claimant attained age 22. R.29. Additionally, based on Claimant's application for supplemental security income filed on December 7, 2006, Claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act. R.29.

At step one, the ALJ found that Claimant had engaged in substantial gainful activity from June 2001 through November 2001 and August 2002 through March 2003. R.22. However, the ALJ recognized that there has been continuous 12-month periods during which Claimant did not engage in substantial gainful activity and that the findings in his decision address the periods during which Claimant did not engage in any substantial gainful activity. R.23.

At step two, the ALJ found that Claimant had severe impairments, including learning disability, low intellectual functioning and depression. R.23. The ALJ concluded that Claimant's impairments are severe because "they cause more than minimal functional limitations." R. 23. The ALJ acknowledged that Claimant also complained of some limitations in his hand and pain in his shoulder, neck and arm. R. 23. However, the ALJ did not find that Claimant was limited in any way as a result of his alleged pain and explained that there are no medical records showing that Claimant has received any treatment for his complaints of pain. R.23.

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments

in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R.23. The ALJ considered Claimant's residual functional capacity and concluded that Claimant has "the residual functional capacity to perform full range of work at all exertion levels but with the following nonexertional limitations. The claimant is unable to understand, remember, and carry out detailed and complex job instructions and engage in work that involves intense focus and concentration for extended periods" and that Claimant "may interact appropriately with the general public only occasionally." R.25. The ALJ stated that his residual functional capacity assessment was supported by the longitudinal record. R.28. The ALJ also determined that Claimant's self-reports of his daily activities to his treating psychiatrists and in his Activities of Daily Living report show that he is capable of performing work within his residual functional capacity." R.28.

At step four, the ALJ concluded that, based on his residual functional capacity, Claimant could perform his past relevant work.[2] R.28.

---

[2] Claimant's "past relevant work as a fast food worker is considered past relevant work because it was: performed within the past fifteen years, lasted long enough in duration for the claimant to learn it, and was performed at the substantial gainful activity level." R.28.

11

## II. LEGAL STANDARD

### A.    Standard of Review

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the

evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d

663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by

reconsidering facts or evidence, or by making independent credibility determinations."

*Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to

determining whether the ALJ applied the correct legal standards and whether there is

substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing

court may enter a judgment "affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. §

405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is

under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d

736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected . . . to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her

previous work and cannot, considering her age, education, and work experience, partake

in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A five-step sequential analysis is utilized in evaluating whether a claimant is

disabled. 20 CFR. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in

13

the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of his motion for summary judgment: (1) whether the ALJ erred in finding that Claimant did not meet listing 12.05C for mental retardation and (2) whether the ALJ disregarded his depression in determining his mental residual functional capacity.

### A. The ALJ Properly Determined Whether Claimant Met or Equaled Listing 12.05C for Mental Retardation

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.2004). An ALJ is required to "meaningfully discuss why a claimant does not medically meet a Listing and failure to engage in such an analysis is grounds for reversal." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (requiring a thorough listing analysis subject to a reversal for an ALJ who does not adequately address evidence favorable to the claimant).

A claimant has the burden of establishing that his impairment satisfies all of the diagnostic criteria to meet or equal a listing. 42 U.S.C. § 423(d)(1)(A); *Sullivan v. Zelby*, 493 U.S. 521, 531 (1990); *Ribaudo*, 458 F.3d at 583 (7th Cir. 2006). For mental retardation, a claimant must initially establish that he has "significantly subaverage general intellectual functioning with deficits in adaptive functional initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 CFR Part 404, Supt P, App. 1, Listing 12.05. In addition to these elements, a claimant must also satisfy one of four specific sets of criteria set forth in A through D of listing 12.05 for mental retardation. *Id.* The criteria for listing 12.05C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

Claimant's main argument here is that the ALJ erred in finding that he did not meet or equal the C criteria for listing 12.05 for mental retardation. That is correct. The ALJ did not specifically address the criteria for 12.05C in his decision and, in fact, acknowledged that "the record shows that the claimant had earned low IQ scores (full scale IQ of 64, verbal IQ of 69, and performance IQ of 63), which placed him in the mild mental retardation intellectual range." R.24. Instead, the ALJ found that Claimant did not meet "the threshold requirement of deficits in adaptive functioning" and therefore did not satisfy preliminary criteria for the listing requirement for mental retardation. R.25.

15

Substantial evidence supports the ALJ's conclusion that Claimant's condition does not meet the threshold requirements for listing 12.05 for mental retardation. Both of the consultants who reviewed the Claimant's records for the state agency opined that the listing was not met, diagnosing Claimant with not mental retardation, but a learning disorder that only mildly impaired his daily activities. R.298-315. Because state agency doctors are experts on determining medical equivalence, an ALJ may properly rely on their opinions. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir.2004).

In addition, both consultants who answered the ALJ's medical interrogatories opined that Claimant did not meet and equal the listing for mental retardation. Specifically, Dr. Biscardi concluded that the medical evidence is not sufficient to assess the severity of Claimant's impairments prior to October 2006. R.339. After October 2006, however, Dr. Biscardi opined that Claimant was able "to perform simple routine tasks, complete a normal workday, interact briefly/superficially with co-workers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." R.339.

In addition, Dr. Rozenfeld concluded that Claimant "has a severe mental impairment that does not meet/equal the listings." R.346. Dr. Rozenfeld also found that "[w]ith regard to the B criteria, mild limitations are demonstrated in daily activities, moderate limitations in social functioning and moderate limitations in concentration, persistence and pace" and that "[t]here are no episodes of decompensation." R.346. Dr.

Rozenfeld also opined that Claimant failed to satisfy the C criteria as well. R.346. Specifically, she opined: "With regard to residual work related functions, the claimant retains the mental capacity to concentrate on, understand, and remember routine, repetitive instructions. His ability to carry out tasks with adequate persistence and pace would be moderately impaired but adequate for completion of routine repetitive tasks. The claimant is able to follow and sustain an ordinary routine without special supervision and make simple work related decisions. He would do best in a work setting which does not require sustained, appropriate interaction with the general public, close supervision or close cooperation with coworkers. His ability to handle stress and changes in the work place would be reduced but adequate to tolerate minor changes in routine." R.346.

The record contains only minimal evidence concerning Claimant's medical condition before he turned twenty-two. There are school records that indicate Claimant was enrolled in some special education. R.347-348. In his decision, the ALJ acknowledges that Claimant has a lower IQ score.[3] R.24. In addition, the ALJ acknowledged that consulting psychiatrist Dr. Stone described Claimant as having "poor level of adaptive functioning", but the ALJ stated that he did not give Dr. Stone's assessment "significant weight because it is based on the claimant's self-reports to Dr.

---

[3] Although low IQ scores may be indicative of retardation, other factors, such as a claimant's life activities, properly play into the ALJ's analysis. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir.1999) (low IQ scores did not demonstrate mental retardation where claimant showed a strong ability to relate with fellow workers and supervisors, understand and follow instructions, and withstand the stress of daily work); *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir.2003).

Stone during his 60-minute consultative examination of the claimant and is inconsistent with the claimant's self-reports in his Activities of Daily Living report."[4] R.24, 26.

Instead, the ALJ gave more weight to and relied upon the State agency psychiatric consultants and consulting psychologists that Claimant's impairment did not meet the listing requirement because "they are consistent with the record." R.28. It was reasonable for the ALJ to conclude that, based on one consulting examination, Dr. Stone's diagnosis of Claimant did not overcome Claimant's longitudinal record in which there was no contemporaneous opinion from a treating physician or psychiatrist that Claimant was mentally retarded. A consulting expert's opinion that a claimant meets or equals a listing is not sufficient to establish that a claimant is, in fact, "disabled" as defined in the Social Security Act because such an opinion with respect to a medical listing is an issue reserved solely for the ALJ to determine. *See* 42 U.S.C.A. § 405(g); 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ, therefore, reasonably concluded based on the medical records and weighing the opinions of the consulting experts that, although Claimant suffered from a

---

[4] The ALJ specifically noted in his opinion that Claimant provided inconsistent reports of his adaptive functioning. R.23. For example, the ALJ explained that although Claimant told Dr. Stone that he needed help with shopping and money management and testified that he would get lost if he left the house by himself, Claimant also submitted a signed and attested statement to the SSA that he shopped for food, left home two to three times per week to visit family and friends, did errands, took public transportation by himself, played cards and games, was able to obtain a driver's license and could keep a bank account and pay bills. R.23-25, *citing* 52-53, 295, 237-238. The ALJ also noted that a function report from Claimant's sister corroborated that he could go out alone and use public transportation, pay bills and maintain a bank account and shop. R.26, *citing* 249-253.

learning disability that imposed some limitations on his adaptive functioning, he did not

meet the threshold requirement for listing 12.05 for mental retardation.

**B.    The ALJ's Finding on Claimant's Mental Residual Functional Capacity Is Supported by Substantial Evidence**

An ALJ makes a RFC determination by weighing all the relevant evidence of

record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. In doing so, he must determine what

weight to give the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527. A

treating physician's opinion is entitled to controlling weight if it is supported by the

medical findings and is not inconsistent with the other substantial evidence in the record.

20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

However, so long as the ALJ "minimally articulates [her] reasons," he may discount a

treating physician's opinion if it is inconsistent with that of a consulting physician or

other substantial medical evidence. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir.

2004). Once well-supported contradictory evidence is introduced, the treating physician's

opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh.

*Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). However, when an ALJ fails to

credit a treating physician's opinion, he must at least minimally discuss the reasons why.

*Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001).

Claimant argues that the ALJ did not properly evaluate and accommodate his

depression in determining his mental residual capacity. Claimant cherry-picked one

phrase from the ALJ's opinion – that his depression was "of no clinical significance"

(R.26) – and argues therefore that the ALJ wholly ignored his depression when determining his mental residual functional capacity. Claimant's Br. [Dkt.#16-1], at 9-10.

Contrary to Claimant's argument, however, the ALJ, concluded that Claimant's depression was a severe impairment. R.23. The ALJ discussed Claimant's medical history noting that he has "sought intermittent treatment for depressive symptoms," and the ALJ "accommodated [his] reports of impaired concentration and depression by precluding him from work that involves detailed and complex job instructions or intense focus and concentration for extended periods." R.27.

In evaluating Claimant's mental impairments, the ALJ concluded that he had moderate difficulties in both social functioning and in maintaining concentration, persistence and pace. R.23-24. This conclusion is fully consistent with treatment records from the Community Mental Health Council at which Claimant sought treatment and also is consistent with Dr. Stone's opinion. R.24, 26-27. In determining Claimant's mental residual functional capacity, the ALJ expressly cited Claimant's treatment records and accommodated his depression by finding he was limited to work that did not involved detailed or complex instructions or intense focus and concentration for extended periods. R. 27.

Claimant also complains that the ALJ rejected an opinion from his treating physician without explanation. Claimant's Br. [Dkt.#16-1], at 12-13. As explained above, when an ALJ fails to credit a treating physician's opinion, he must at least

minimally discuss the reasons why. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001).

Claimant, however, does not point to any opinion that is inconsistent with the ALJ's

determination of his mental residual functional capacity. Treatment notes from the

Community Mental Health Council, which the ALJ discusses in his opinion (R.27), do

not contain an assessment of Claimant's ability to perform work-related mental activities.

The records from the Community Mental Health Council, however, do contain Claimant's

Global Assessment of Functioning ("GAF") scores of 50-55, which indicate serious to

moderate symptoms.[5] R.27, 323, 362. However, the Seventh Circuit has determined that

a claimant cannot use a GAF score to establish a disability. *Denton v. Astrue*, 596 F.3d

419, 425 (7th Cir. 2010) (holding that although GAF a score measures severity of a

claimant's symptoms and functional levels, the score "does not reflect the clinician's

opinion of functional capacity").

In determining Claimant's RFC in this case, the ALJ relied, in large part, on the

State agency psychiatric consultants, the medical experts and Claimant's longitudinal

medical record and reasonably gave more weight to the non-treating psychiatric

consultants and medical experts. In his opinion, the ALJ extensively detailed his review

of Claimant's longitudinal medical records and also explained the reasons why he did not

---

[5] The GAF Scale reports a clinician's judgment of an individual's overall level of functioning and it is used in planning, measuring the impact, and predicting the outcome of the treatment. *See* Diagnostic and Statistical Manual of Mental Disorders, at 32-34 (4th ed. 2000). GAF scores from 41-50 indicate serious symptoms or impairments, including suicidal ideation, no friends and inability to hold a job. *Id.* at 34. GAF scores from 51-60 indicate moderate symptoms, and scores from 61-70 indicate only mild symptoms. *Id.*

give great or controlling weight to certain evidence and opinions. R.26-28. Because the ALJ relied upon objective medical evidence and clearly and comprehensively explained his rationale, there is substantial evidence in the record to support the findings of the ALJ.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant Monroe Jones' motion for summary judgment is denied [Dkt.#16], and the Commissioner's motion is granted [Dkt.#20]. The Commissioner's decision denying Claimant's application for child's disability benefits and supplemental security income is affirmed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 5, 2012